UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CAROL CONNELLY,<br>Plaintiff,<br><br>v.<br><br>IKON OFFICE SOLUTIONS, INC.<br>Defendant. | CIVIL NO. 3:03CV0551(JCH)<br><br>APRIL 8, 2004 |

## LOCAL RULE 56(a)1 STATEMENT

Pursuant to Local Rule of Civil Procedure 56(a)1, the Defendant, IKON Office Solutions, Inc., hereby asserts the following material facts that are not in dispute for purposes of its Motion for Summary Judgment:

1. IKON Office Solutions, Inc. ("IKON") hired Plaintiff on November 18, 2002 as a Corporate Recruiter/Trainer for the Southwestern Connecticut territory. (Compl. ¶ 3).[1]

2. The Southwestern Connecticut territory included Milford and Stamford. (Pl.'s Dep. p. 148; Exhibit B, ¶ 4).[2]

3. As a Recruiter/Trainer, Plaintiff was expected to train client's employees on the proper

---

[1] Plaintiff instituted this action by filing an Application for Prejudgment Remedy and Complaint on or about March 13, 2003. Defendant removed the matter to this Court on March 27, 2003. Plaintiff did not object to that removal. Defendant filed an Answer and Affirmative Defenses to the Complaint on April 11, 2003. During a telephonic status conference on December 5, 2003, this Court (Hall, J.) denied Plaintiff's Application for Prejudgment Remedy and entered a scheduling order under which the parties were to proceed in the litigation. References to Plaintiff's Complaint refer to the document titled "Complaint" that was filed with Plaintiff's Application for Prejudgment Remedy. A copy of that Complaint is attached as Exhibit A-1 to the Affidavit of Margaret J. Strange, Esq., dated April 7, 2004 ("Strange Affidavit"), filed simultaneously herewith and attached hereto as Exhibit A. The Complaint is hereinafter referenced as "Compl., ¶ __."

[2] Copies of relevant pages from Plaintiff's certified deposition transcript are attached to the Strange Affidavit as Exhibit A-2. Plaintiff's deposition is hereinafter referred to as "Pl. Dep. p. __." The Affidavit of Sarah Allen dated April 6, 2004 ("Allen Affidavit") was filed simultaneously herewith and is attached hereto as Exhibit B. Paragraphs of the Allen Affidavit are hereinafter referenced as "Exhibit B ¶ __;" documents appended to the Allen Affidavit are hereinafter referenced as "Exhibit B – __."

use of IKON office products. (Compl. ¶ 4). Plaintiff was also supposed to recruit candidates for open positions at IKON's client's worksites. (Compl. ¶ 4).

4. In this position, Plaintiff reported directly to Kimberly Fordham, Area Recruiting Manager. (Compl. ¶ 10).

5. Less than two months into Plaintiff's tenure, co-workers began lodging complaints with Kimberly Fordham about Plaintiff's performance. (Exhibit C ¶ 3).[3]

6. Specifically, Plaintiff's co-workers reported that Plaintiff was having difficulty presenting, understanding, and organizing herself, and that she was having difficulty developing a positive, professional attitude with customers and peers. (Exhibit C ¶ 4).

7. On January 23, 2003, Ms. Fordham and her supervisor, Richard Silva, met with Plaintiff to discuss concerns Plaintiff's co-workers had expressed about Plaintiff's performance. (Exhibit C ¶ 5; Compl. ¶ 30).

8. In preparation for the meeting, Ms. Fordham and Mr. Silva prepared a written "Employee Counseling Report" containing the concerns that had been reported to them. (Exhibit C-1, *Employee Counseling Report*).

9. After discussing the contents of the Employee Counseling Report with Plaintiff, Mr. Silva ripped it up and did not issue it to Plaintiff. (Compl. ¶ 32).

10. Plaintiff testified that at the end of this meeting, Ms. Fordham stated that the meeting should not have happened and that Ms. Fordham and Mr. Silva both apologized to her. (Pl.'s Dep. pp. 122-123).

11. By e-mail dated Saturday, January 25, 2003, Plaintiff contacted Sarah Allen, the Human

---

[3] The Affidavit of Kimberly Fordham dated April 5, 2004 ("Fordham Affidavit") was filed simultaneously herewith and is attached hereto as Exhibit C. Paragraphs of the Fordham Affidavit are hereinafter referenced as "Exhibit C ¶ __;" documents appended to the Fordham Affidavit are hereinafter referenced as "Exhibit C-__"

Resources Manager for IKON's Connecticut Marketplace, and carbon copied Kimberly Fordham and Richard Silva. (Exhibit B-1: *January 25, 2003 e-mail from Plaintiff to Sarah Allen regarding Meeting on 1.23.03*).

12. In the e-mail dated Saturday, January 25, 2003, Plaintiff complained that the January 23, 2003 meeting was "unmerited, unjust, insulting and harassment." (Exhibit B-1). Plaintiff requested a meeting with Ms. Allen to discuss Ms. Fordham's and Mr. Silva's actions during the meeting. (Exhibit B-1).

13. One of Plaintiff's initial recruiting assignments was for a receptionist position in the Stamford office of Wiggin & Dana LLC, an IKON client. (Compl. ¶ 5).

14. Kimberly LaFleur, an IKON Senior Integrated Account Manager, was the designated liaison between Wiggin & Dana and IKON. (Compl. ¶ 6).

15. Trudy Muhlbauer was the Human Resources Director for Wiggin & Dana, LLC and the client contact with whom IKON was working to fill the position. (Exhibit D ¶ 5; Compl. ¶ 15).[4]

16. Plaintiff began recruiting candidates for the Wiggin & Dana Receptionist position in early December of 2002. (Compl. ¶ 5).

17. Throughout the month of December 2002, Plaintiff participated in a number of candidate interviews with Kimberly LaFleur. (Compl. ¶ 6).

18. Plaintiff also participated in a few candidate interviews with Tom Magel, an IKON Operations Manager. (Compl. ¶ 8).

19. By mid-January Plaintiff had failed to provide any acceptable candidates for the

---

[4] The Affidavit of Kimberly LaFleur dated April 5, 2004 ("LaFleur Affidavit") was filed simultaneously herewith and is attached hereto as Exhibit D. Paragraphs of the LaFleur Affidavit are hereinafter referenced as "Exhibit D ¶ __;" documents appended to the LaFleur Affidavit are hereinafter referenced as "Exhibit D - __.

receptionist position. (Exhibit D ¶ 7).[5]

20. On January 22, 2003, while Plaintiff was still trying to recruit candidates for the Receptionist position at Wiggin & Dana, Plaintiff asked Ms. LaFleur why three candidates she had presented were not offered the position. (Exhibit D-1 *January 22, 2003 e-mail from Plaintiff to Kimberly LaFleur*).

21. In an e-mail dated January 24, 2003, Ms. LaFleur responded by providing the reasons for each candidate's rejection. (Exhibit D-2 *January 24, 2003 e-mail from Kimberly LaFleur to Plaintiff*).

22. Ms. LaFleur explained that one candidate was not hired because Plaintiff had ignored protocol and sent the candidate directly to Wiggin & Dana without first scheduling an interview with Ms. LaFleur or completing an IKON application. (Exhibit D-2).

23. With respect to the other two candidates, Ms. LaFleur explained that neither she nor the Wiggin & Dana contact, Trudy Muhlbauer, felt they possessed the professional qualities needed to be a receptionist for the firm. (Exhibit D-2). In that e-mail, Ms. LaFleur also informed Plaintiff that she had contacted an outside recruiting agency, Spherion, and that agency had found several other candidates with whom she and Ms. Muhlbauer would be meeting the following week. (Exhibit D-2).

24. The overwhelming majority of the candidates Ms. LaFleur and Ms. Muhlbauer interviewed for the position were black. (Exhibit D ¶ 11).

25. One of those candidates was Mona Jackson, a black female. (Exhibit D ¶ 11).

26. The IKON employee who previously held the receptionist position at Wiggin & Dana

---

[5] IKON eventually contacted Spherion, an outside employee recruiting agency, to fill the position. Using an outside recruiting agency is not a common or favored practice at IKON because it incurs unnecessary costs. (Exhibit D ¶ 10).

4

was black. (Exhibit D ¶ 11).

27. The three finalists for the position were black. (Exhibit D ¶ 11).

28. The candidate IKON hired, with Wiggin & Dana's input, was black. (Exhibit D ¶ 11).

29. In an e-mail dated Saturday, January 25, 2003, Plaintiff accused Ms. LaFleur of lying about the reasons why candidates were rejected. (Exhibit D-3 *January 25, 2003 e-mail from Plaintiff to Kimberly LaFleur*).

30. Specifically, Plaintiff wrote that she had earlier asked Ms. LaFleur in person why candidates were being declined. (Exhibit D-3). Plaintiff claimed that in person, Ms. LaFleur had "referred to Ms. Muhlbauer" and said Ms. Muhlbauer did not "want another girl from the 'ood at the front desk" and did not want "someone wearing those muffin hats and pronouncing the firm as Wigga' and Dannna." (Exhibit D-3).

31. In this e-mail Plaintiff also stated that Tom Magel had commented to her that one candidate was "sexy" and another candidate "needed too much dental work." (Exhibit D-3). Plaintiff also claimed that Tom Magel would not hire a third candidate because she had a "heart condition" and he did not want to take the risk that she "might be at the doctors all the time." (Exhibit D-3). Tom Magel, Kimberly Fordham, Richard Silva, and Sarah Allen, the Human Resources Manager for IKON's Connecticut Marketplace, were carbon copied on this e-mail. (Exhibit D-3).

32. Plaintiff testified she also complained about the procedures used to conduct the candidate interviews. Specifically, Plaintiff testified that she complained Ms. LaFleur and Mr. Magel did not take notes during interviews and did not interview each candidate for an identical amount of time. (Pl.'s Dep. pp 101-102).

33. Plaintiff also testified that she complained that Ms. LaFleur offered one candidate, Mona

5

Jackson, the position before all of the other candidates were interviewed. (Pl.'s Dep. pp. 155, 163). Mona Jackson, who Plaintiff claims was offered the receptionist position by Ms. LaFleur, is black. (Exhibit D ¶ 11).

34. Plaintiff claims that these complaints regarding the Wiggin & Dana receptionist position form the basis for her retaliation claim. In her deposition, Plaintiff articulated the basis of her lawsuit to redress her complaints as follows:

Q: Is that the basis for your lawsuit?

A: No. [T]he basis for the lawsuit is that, in reporting a hiring practice that is not legal, I was retaliated upon, and in being retaliated upon, I suffered time out of work. That's what it's about.

Q: And you said that in reporting a hiring practice that was not legal. What hiring practice is that that you claim you reported?

A: Offering a position to a candidate before interviewing the other candidates. (Pl.'s Dep. pp. 192-193).

Q: So your complaint with Kim LaFleur is that she offered the position to Mona Jackson on the spot without interviewing others, correct?

A: Correct. It's the hiring procedure, not racism, the hiring procedure. (Pl.'s Dep. p. 161).

35. On January 28, 2003, Plaintiff sent an e-mail to Jim Morrissey, IKON's Connecticut Marketplace Vice President/General Manager. (Exhibit E-1 *January 28, 2003 e-mail from Plaintiff to Jim Morrissey*).[6]

36. Plaintiff's e-mail to Mr. Morrissey reiterated her complaints about the hiring procedures employed on the Wiggin & Dana account. (Exhibit E-1).

37. Plaintiff carbon copied Paul Lee, IKON's Connecticut Marketplace Director of Financial

---

[6] The Affidavit of Jim Morrissey dated April 7, 2004 ("Morrissey Affidavit") was filed simultaneously herewith and is attached hereto as Exhibit E. Paragraphs of the Morrissey Affidavit are hereinafter referenced as "Exhibit E ¶ ___;" documents appended to the Morrissey Affidavit are hereinafter referenced as "Exhibit E - ___.

6

Operations and John Hart, IKON's District Director of Outsourcing and attached her original e-mail complaint to the message. (Exhibit E-1).

38. In an e-mail dated January 28, 2003, Plaintiff sent an e-mail directly to Trudy Muhlbauer, the client representative at Wiggin & Dana, LLC. (Exhibit F-1 *January 28, 2003 e-mail from Plaintiff to Trudy Muhlbauer*).[7]

39. In that e-mail, Plaintiff accused Ms. Muhlbauer of asking "for a white male or female specifically" to fill the receptionist position. (Exhibit F-1).

40. Plaintiff attached her original e-mail dated January 25, 2003 to the e-mail dated January 28, 2003 to Ms. Muhlbauer. (Exhibit F-1).

41. By e-mail dated January 29, 2003, Trudy Muhlbauer forwarded Plaintiff's message to Mr. Magel and expressed her anger at what she referred to as Plaintiff's "forgery" and baseless accusations. (Exhibit F-2). Mr. Magel forwarded Ms. Muhlbauer's e-mail to Mr. Morrissey. (Exhibit F-2).

42. By e-mail dated January 29, 2003, Mr. Morrissey informed Plaintiff that he was "very concerned" about the interference Plaintiff's actions may have had with IKON's relationship with Wiggin & Dana, and demanded that she cease corresponding with the client until she met with Sarah Allen. (Exhibit E-2).

43. On Friday, January 24, 2003, Kimberly LaFleur contacted Sarah Allen and claimed that Plaintiff had been sexually harassing her. (Exhibit B-2 *Sarah Allen notes from January 24, 2003 telephone conversation with Kimberly LaFleur*).

44. On Monday, January 27, 2003, Sarah Allen responded to both Plaintiff's January 25,

---

[7] The Affidavit of Tom Magel dated April 6, 2004 ("Magel Affidavit") was filed simultaneously herewith and is attached hereto as Exhibit F. Paragraphs of the Magel Affidavit are hereinafter referenced as "Exhibit F ¶ __;" documents appended to the Magel Affidavit are hereinafter referenced as "Exhibit F - __.

2003 e-mail complaining about the meeting with Ms. Fordham and Mr. Silva and her January 25, 2003 e-mail complaining about the hiring practices used for the Wiggin & Dana account. (Exhibit B-3 *January 27, 2003 e-mail from Sarah Allen to Plaintiff*).

45. Ms. Allen requested that Plaintiff call her as soon as possible to schedule a meeting to discuss her concerns. (Exhibit B-3).

46. On January 28, 2003, Plaintiff sent an e-mail to Ms. Allen informing her that she was taking a leave of absence from work through February 3, 2003, and would like to wait until then to meet with her. (Exhibit B-4 *January 28, 2003 e-mail from Plaintiff to Sarah Allen*).

47. By e-mail dated January 31, 2003, Plaintiff notified Ms. Allen that she would remain out of work until February 10, 2003. (Exhibit B ¶ 11).

48. Ms. Allen scheduled a 10:00 a.m. meeting with Plaintiff on that date to discuss her concerns. (Exhibit B-5 *February 12, 2003 letter from Ms. Allen to Plaintiff*). Ms. Allen received a voice mail message from Plaintiff at 9:20 a.m. on February 10, 2003 indicating that Plaintiff would not be returning to work on that day. (Exhibit B-5). Plaintiff indicated that she would not be returning to work until February 13, 1003. (Exhibit B-5).

49. Ms. Allen re-scheduled the meeting with Plaintiff for February 14, 2003. (Exhibit B-5). On February 12, 2003, Plaintiff informed Ms. Allen that she would be out of work until February 18, 2003. (Exhibit B ¶ 14).

50. By letter dated February 13, 2003, Ms. Allen requested that Plaintiff contact her by the close of business on February 17, 2003 to arrange a meeting. (Exhibit B-6 *February 13, 2003 letter from Ms. Allen to Plaintiff*).

51. Ms. Allen proceeded with an investigation into the concerns raised by Plaintiff. On

8

February 18, 2003, Ms. Allen interviewed Tom Magel, Kimberly LaFleur, and Kimberly Fordham. (Exhibit B-7 *February 18, 2003 Sarah Allen Investigation Notes*).

52. That same day, Plaintiff left Ms. Allen a voice mail message in which she stated she did not want Ms. Allen to conduct the investigation into her claims. (Exhibit B ¶ 18). Plaintiff insisted on a meeting with an alternative human resources representative. (Exhibit B ¶ 18).

53. Ms. Allen's supervisor, the Regional Human Resources Director, Mai White, took over the investigation into Plaintiff's complaints.

54. Plaintiff returned to work on February 27, 2003 to meet with Mai White. (Exhibit G-1 *Mai White's Notes from February 27, 2003 meeting with Plaintiff*).[8]

55. Ms. White met with Plaintiff on that date to discuss/investigate three issues: Plaintiff's complaint regarding the performance counseling meeting; Plaintiff's complaint of alleged discriminatory hiring practices; and Ms. LaFleur's sexual harassment complaint against Plaintiff. (Exhibit G-1).

56. When Ms. White informed Plaintiff that Ms. LaFleur had lodged a complaint against her, Plaintiff immediately raised a complaint of sexual harassment against Ms. LaFleur. (Exhibit G-1). Ms. White discussed and investigated this complaint with Plaintiff during this meeting as well. (Exhibit G-1). At the end of the meeting, at Plaintiff's request, Ms. White agreed to allow Plaintiff to remain out of work and to pay her pending investigation of the four complaints. (Exhibit G-1).

57. After her lengthy meeting with Plaintiff, Ms. White spent a "tremendous amount of time"

---

[8] The Affidavit of Mai White dated April 6, 2004 ("White Affidavit") was filed simultaneously herewith and is attached hereto as Exhibit G. Paragraphs of the White Affidavit are hereinafter referenced as "Exhibit G ¶ __;" documents appended to the White Affidavit are hereinafter referenced as "Exhibit G - __.

9

interviewing everyone Plaintiff identified as "involved" in the issues about which she complained. (Pl.'s Dep. p. 130).

58. On March 4, 2003, Ms. White interviewed Kimberly LaFleur, Tom Magel, and Richard Silva. (Exhibit G-2 *Ms. White's interview notes*). Ms. White also reviewed Ms. Allen's notes from interviews with these individuals. (Exhibit B-7 *Ms. Allen's investigation notes that Ms. White reviewed*).

59. In addition to the interviews, Ms. White gathered empirical data regarding the hiring practices on the Wiggin & Dana account. (Exhibit G ¶ 7). Ms. White discovered that the overwhelming majority of the candidates interviewed for the position were black. (Exhibit G ¶ 7). She also noted that the IKON employee who previously held the Receptionist position at Wiggin & Dana was black, that the three finalists for the position were black, and that a black female had been hired to fill the position. (Exhibit G ¶ 7).

60. On March 7, 2003, Ms. White met with Plaintiff to discuss the results of her investigation with Plaintiff. (Exhibit G-3 *Ms. White's notes from March 7, 2003 meeting with Plaintiff*). During that meeting, Ms. White explained to Plaintiff that her investigation did not reveal evidence sufficient to support either the sexual harassment complaint made by Plaintiff against Ms. LaFleur or the sexual harassment complaint made by Ms. LaFleur against Plaintiff. (Exhibit G-3).

61. In resolution of both complaints, Ms. White advised Plaintiff and Ms. LaFleur to limit their discussions to work-related activities. (Exhibit G-3).

62. Ms. White also informed Plaintiff that there was no evidence to substantiate her claims of racial discrimination on the Wiggin & Dana account. (Exhibit G-3). Ms. White told Plaintiff she had interviewed all IKON employees involved in hiring for the Wiggin &

Dana account, and none of them had knowledge or information that supported Plaintiff's claim of race discrimination. (Exhibit G-3).

63. Ms. White shared with Plaintiff that she had discovered the overwhelming majority of the candidates interviewed for the position were black; that the IKON employee who previously held the receptionist position at Wiggin & Dana was black; that the three finalists for the position were black; and that a black female had been hired to fill the position. (Exhibit G-3).

64. Ms. White's investigation and ultimate resolution had "essentially solved the issue." (Pl.'s Dep. p. 130). This was a satisfactory resolution to Plaintiff. (Pl.'s Dep. p. 137). At the close of the meeting, Ms. White informed Plaintiff that she should return to work on Monday, March 10, 2003. At Plaintiff's request, Ms. White memorialized their conversation and via e-mail later that day sent Plaintiff a letter titled "Resolution of Complaint." (Exhibit G-4). Ms. White told Plaintiff to contact her immediately if she had any concerns in the future. (Exhibit G-4).

65. During Plaintiff's initial meeting with Ms. White on February 27, 2003, she requested that she be transferred to a new supervisor at a new worksite. (Exhibit G ¶ 3).

66. Ms. White informed Plaintiff during their March 7, 2003 resolution meeting that IKON agreed to accommodate Plaintiff's transfer request. (Exhibit G-4). Ms. White told Plaintiff that she should report to work in Stamford upon her return on March 10, 2003, and report to Joseph Manglass, Area Recruiting Manager. (Exhibit G-3). Plaintiff agreed to do so. (Exhibit G ¶ 12).

67. The following day, Saturday, March 8, 2003, Plaintiff sent an e-mail to Ms. White indicating that she would like her to make changes to the "Resolution of Complaint"

letter because she was "highly uncomfortable" with the way the "situation with Kim LaFleur was represented." (Exhibit G-5 *March 8, 2003 e-mail from Plaintiff to Ms. White*).

68. Plaintiff indicated she wanted changes made to the "Resolution of Complaint" letter before it became an "ending document." (Exhibit G-5). Plaintiff carbon copied Sarah Allen on this e-mail. (Exhibit G-5).

69. Because Ms. White was on vacation, Ms. Allen responded to Plaintiff's e-mail on Tuesday, March 11, 2003. (Exhibit B-8 *March 11, 2003 e-mail from Ms. Allen to Plaintiff*). Ms. Allen informed Plaintiff that the Resolution of Complaint was not a draft. She stated that Plaintiff's complaints had been thoroughly investigated and the Resolution of Complaint letter memorialized IKON's final resolution of the matters. (Exhibit B-8). Ms. Allen reiterated the fact that in an effort to accommodate Plaintiff and address her concerns about reporting to the Milford location, IKON changed her assigned work site. (Exhibit B-8). Ms. Allen stated that if Plaintiff would like to continue to report to the Milford location that "too could be arranged." (Exhibit B-8).

70. On March 15, 2003, Plaintiff reported to work at the Stamford location. Plaintiff testified that she was "happy" and "excited" that she was transferred to a new supervisor. (Pl.'s Dep. p. 130-131).

71. From March 31, 2003 through April 4, 2003, Plaintiff attended an IKON-sponsored training in New York City. (Exhibit H ¶ 6).[9] Plaintiff had requested this training from her new supervisor in the Stamford office, Joseph Manglass. (Exhibit H ¶ 6).

---

[9] The Affidavit of Joseph Manglass dated April 7, 2004 ("Manglass Affidavit") was filed simultaneously herewith and is attached hereto as Exhibit H. Paragraphs of the Manglass Affidavit are hereinafter referenced as "Exhibit H ¶ __."

72. After two days at the training, Plaintiff complained about the commute to New York City. (Exhibit H ¶ 7). In response to Plaintiff's complaint, IKON offered to pay for a hotel room for her in New York City. (Exhibit H ¶ 8).

73. On June 11, 2003, Plaintiff stopped reporting to work at IKON because her attorney told her to. (Pl.'s Dep. pp. 142; 144-145). No one at IKON told Plaintiff not to return to work. (Pl.'s Dep. pp. 142, 144-145).

74. By complaint dated March 28, 2003, Plaintiff filed a charge against IKON with the Connecticut Commission on Human Rights and Opportunities ("Commission").[10] In that complaint, Plaintiff charged IKON with sexual harassment, aiding and abetting discrimination, and retaliation in violation of the Connecticut Fair Employment Practices Act and Title VII of the Civil Rights Act of 1964 (as amended).

75. The Commission's investigation into Plaintiff's claims is currently pending.

76. On April 14, 2003, Plaintiff filed a separate complaint against IKON and Wiggin & Dana, LLC with the Equal Employment Opportunities Commission ("EEOC").[11] In that complaint, Plaintiff charged IKON with race, color, sex, and disability discrimination as well as retaliation.

77. The EEOC's investigation into Plaintiff's claims is currently pending.

78. Plaintiff initiated the instant action by filing an Application for Prejudgment Remedy and complaint in Connecticut Superior Court on or about March 13, 2003. IKON removed the case to this Court on March 27, 2003.

---

[10] A true and correct copy of the complaint Plaintiff filed with the Commission is attached to the Strange Affidavit as Exhibit A-3.

[11] A true and correct copy of the complaint Plaintiff filed with the EEOC is attached to the Strange Affidavit as Exhibit A-4.

79. On December 5, 2003, this Court (Hall, J.) denied Plaintiff's Application for Prejudgment Remedy.

                                      DEFENDANT,
                                      IKON OFFICE SOLUTIONS, INC.,

By: _/s/ Margaret J. Strange_
Margaret J. Strange (ct 08212)
strangem@jacksonlewis.com
Holly L. Cini (ct 16388)
cinih@jacksonlewis.com
Jackson Lewis LLP
55 Farmington Avenue
Suite 1200
Hartford, CT 06105
Ph: (860) 522-0404
Fax: (860) 247-1330

CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent by first class mail, postage prepaid, on this 8th day of April, 2004 to the following counsel of record:

> Cynthia R. Jennings, Esq.
> The Barrister Law Group, LLC
> 211 State Street
> Bridgeport, CT 06604

_____
Margaret J. Strange