UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CAROL CONNELLY,<br>　　Plaintiff, | : <br> : <br> : CIVIL NO. 3:03CV0551(JCH) |
| v. | : <br> : |
| IKON OFFICE SOLUTIONS, INC.<br>　　Defendant. | : <br> : APRIL 6, 2004 <br> : |

## AFFIDAVIT OF MAI WHITE

MAI WHITE, being duly sworn and according to law, deposes and says:

1. I am over the age of 18 and believe in the obligation of an oath. This Affidavit is submitted in support of IKON's Memorandum of Law in Support of its Motion for Summary Judgment ("Memorandum") in the above-captioned matter.

2. At all times relevant to this matter, I have been employed by IKON Office Solutions, Inc. ("IKON") as a Regional Human Resources Director.

3. On February 27, 2003, I met with Plaintiff Carol Connelly to discuss/investigate three issues: Plaintiff's complaint regarding the performance counseling meeting; Plaintiff's complaint of alleged discriminatory hiring practices; and Ms. LaFleur's sexual harassment complaint against Plaintiff. During this meeting, Plaintiff requested that she be transferred to a new supervisor at a new worksite.

4. When I informed Plaintiff that Ms. LaFleur had lodged a complaint against her, Plaintiff immediately raised a complaint of sexual harassment against Ms. LaFleur. I discussed and investigated this complaint with Plaintiff during this

meeting as well. At the end of the meeting, at Plaintiff's request, I agreed to allow Plaintiff to remain out of work and to pay her pending investigation of the four complaints. I affirm that a true and correct copy of my notes from this meeting with Plaintiff is attached as Exhibit G-1.

5. After this lengthy meeting with Plaintiff, I embarked on a thorough investigation of Plaintiff's claims that included interviewing everyone Plaintiff identified as involved in the issues about which she complained. I also reviewed notes Sarah Allen had taken during her investigation of Plaintiff's complaints.

6. On March 4, 2003, I interviewed Kimberly LaFleur, Tom Magel, and Richard Silva. I affirm that a true and correct copy of my notes from these interviews is attached as Exhibit G-2.

7. In addition to the interviews, I gathered empirical data regarding the hiring practices on the Wiggin & Dana account. I discovered that the overwhelming majority of the candidates interviewed for the receptionist position were black. I also noted that the IKON employee who previously held the Receptionist position at Wiggin & Dana was black, that the three finalists for the position were black, and that a black female had been hired to fill the position.

8. On March 7, 2003, I met with Plaintiff to discuss the results of my investigation with her. I affirm that a true and correct copy of my notes from that meeting is attached as Exhibit G-3.

9. During that meeting, I explained to Plaintiff that my investigation did not reveal evidence sufficient to support either the sexual harassment complaint made by Plaintiff against Ms. LaFleur or the sexual harassment complaint made by Ms.

> LaFleur against Plaintiff. In resolution of both complaints, I advised Plaintiff and Ms. LaFleur to limit their discussions to work-related activities.

10. I also informed Plaintiff that there was no evidence to substantiate her claims of racial discrimination on the Wiggin & Dana account. I told Plaintiff I had interviewed all IKON employees involved in hiring for the Wiggin & Dana account, and none of them had knowledge or information that supported Plaintiff's claim of race discrimination.

11. I shared with Plaintiff that I had discovered the overwhelming majority of the candidates interviewed for the position were black; that the IKON employee who previously held the Receptionist position at Wiggin & Dana was black; that the three finalists for the position were black; and that a black female had been hired to fill the position.

12. Plaintiff agreed that my investigation and ultimate resolution had resolved her concerns. At the close of the meeting, Plaintiff agreed that she would return to work on Monday, March 10, 2003. Despite the lack of evidence to support any of Plaintiff's complaints, I informed Plaintiff that IKON had agreed to accommodate her transfer request. Accordingly, Plaintiff was to report to work on in Stamford to Joseph Manglass, Regional Trainer. Plaintiff agreed to do so.

13. At Plaintiff's request, I memorialized our March 7, 2003 conversation and via e-mail later that day sent Plaintiff a letter titled "Resolution of Complaint." I told Plaintiff to contact me immediately if she had any concerns in the future.

14. The following day, Saturday, March 8, 2003, I received an e-mail from Plaintiff indicating that she would like to make changes to the "Resolution of Complaint"

letter because she was "highly uncomfortable" with the way the "situation with Kim LaFleur was represented." Plaintiff stated she wanted changes made to the "Resolution of Complaint" letter before it became an "ending document." Plaintiff carbon copied Sarah Allen on this e-mail. I affirm a true and correct copy of the March 8, 2003 e-mail from Plaintiff is attached as Exhibit G-5.

_____
MAI WHITE

Sworn to before me
this 6th day of April 2004.

_____
Notary Public/Commissioner of the Superior Court
My Commission Expires:

Notarial Seal
Eleanora M. Layman, Notary Public
East Whiteland Twp., Chester County
My Commission Expires Feb. 25, 2006

Member, Pennsylvania Association Of Notaries

<u>CERTIFICATION OF SERVICE</u>

This is to certify that a copy of the foregoing was sent by first class mail, postage prepaid, on this 8th day of April, 2004 to the following counsel of record:

> Cynthia R. Jennings, Esq.
> The Barrister Law Group, LLC
> 211 State Street
> Bridgeport, CT 06604

_____
Margaret J. Strange